UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| EMMANUEL EVARISTE, | ) |
|  | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| CITY OF BOSTON, | ) |
| OFFICER JONATHAN O'BRIEN, and | ) |
| OFFICER KARL DUGAL, | ) |
|  | ) |
| Defendants. | ) |

Civil Action No.
18-12597-FDS

_____)

## MEMORANDUM AND ORDER

**SAYLOR, C. J.**

This is a *pro se* civil rights action against the City of Boston and two Boston Police

Department officers.  Plaintiff Emmanuel Evariste has filed suit based on his arrest on June 24,

2018, which ultimately resulted in his conviction for possession with intent to distribute a Class

B substance, Mass. Gen. Laws ch. 94C, § 32A(a).  Evariste alleges that he was subject to an

illegal strip-search in public, arrested without probable cause, and later suffered injuries in an

automobile accident while in custody serving his sentence.  The complaint alleges various claims

under 42 U.S.C. § 1983 and state law.

For the reasons set forth below, the motion to dismiss will be granted.

## I.      Background

On June 24, 2018, Boston Police Department Officers Karl Dugal and Jonathan O'Brien

arrested Emmanuel Evariste inside Downtown Convenience at 40 Boylston Street in Boston.

(Def. Ex. 6).  According to Officers Dugal and O'Brien, they observed a crowd of known drug

users surrounding Evariste, one of whom was manipulating something in his hands, and

observed Evariste grabbing an object from his sock.  (*Id.*).  Officer O'Brien was familiar with

Evariste and knew that he had a prior history of sale and distribution of drugs.  (*Id.*).  They

observed bulges in his socks.  (*Id.*).  They detained him and searched both socks, which revealed

a quantity of money and nine individually wrapped pieces of a white substance that they believed

to be crack cocaine.  (*Id.*).  According to the complaint, the officers reached into his underwear

and searched his underwear at the entrance to the store.  (Am. Compl. 1).

On June 25, 2018, Evariste was arraigned on charges of possession with intent to

distribute a Class B substance, Mass. Gen. Laws ch. 94C, § 32A(a), and possession with intent to

distribute a Class B substance (second or subsequent offense), Mass. Gen. Laws. ch. 94C, §

32A(b), both felonies.  (Def. Ex. 2).  On September 27, 2018, he pleaded guilty to possession

with intent to distribute a Class B substance, and received a sentence of two years imprisonment,

with six months to be served, and probation until March 25, 2020.  (Def. Ex. 3).[1]  On June 26,

2019, he moved to withdraw his plea and for a new trial.  (Def. Ex. 2).  However, on July 24,

2019, the trial court denied that motion.  (*Id.*).

Evariste filed the complaint in this case on December 17, 2018, against Officer Dugal,

Officer O'Brien, and the Boston Police Department.  On March 27, 2019, this Court issued an

order dismissing the Boston Police Department as a defendant and directing Evariste to file an

amended complaint that complied with the pleading requirements of Fed. R. Civ. P. 8(a).  On

June 27, 2019, Evariste filed an amended complaint listing Officer O'Brien, Officer Dugal, and

---

[1] Evariste resolved this matter in conjunction with two other matters, as to which he received concurrent sentences.  In Docket No. 1801CR001432, which arose out of an April 2018 arrest, he pleaded guilty to possession with intent to distribute a Class B substance and received a sentence of two years, with six months to be served, and probation until March 25, 2020.  (Def. Ex. 4).  In Docket No. 1701CR001418, which arose out of a March 2017 arrest, he stipulated to a violation of his probation and was re-sentenced to probation until March 25, 2020.  (Def. Ex. 5).

the City of Boston as defendants.  The amended complaint asserts five claims: (1) unlawful

search under 42 U.S.C. § 1983; (2) false arrest under 42 U.S.C. § 1983; (3) conspiracy under 42

U.S. § 1983; (4) intentional or negligent infliction of emotional distress; and (5) punitive

damages.

Defendants have moved to dismiss the complaint for failure to state a claim pursuant to

Fed. R. Civ. P. 12(b)(6).

## II.      Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and

give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must

be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set

forth "factual allegations, either direct or inferential, respecting each material element necessary

to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301,

305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1,

6 (1st Cir. 2005)).

**III.     Analysis**

**A.     The Claims Are Barred by the Favorable-Termination Rule.**

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that "in

order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other

harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §

1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal,

expunged by executive order, declared invalid by a state tribunal authorized to make such

determination, or called into question by a federal court's issuance of a writ of habeas corpus."

The Court based its decision on the "hoary principle" that "civil tort actions are not appropriate

vehicles for challenging the validity of outstanding criminal judgments." *Id*. at 486.  In

determining whether a § 1983 claim is barred under *Heck*, a district court must "consider the

relationship between the § 1983 claim and the conviction, including asking whether the plaintiff

could prevail only by 'negat[ing] an element of the offense of which he [was] convicted.'"

*Thore v. Howe*, 466 F.3d 173, 179 (1st Cir. 2006) (quoting *Heck*, 512 U.S. at 486 n.6).  If a

favorable judgment for the plaintiff would "necessarily imply the invalidity of his conviction or

sentence," the complaint must be dismissed unless the plaintiff can demonstrate that the

conviction or sentence has already been invalidated.  *Heck*, 512 U.S. at 487.

Here, it is undisputed that plaintiff's conviction for possession with intent to distribute a

Class B substance has not been favorably terminated, whether on direct appeal, by issuance of a

writ of habeas corpus, or otherwise.  Under *Heck*, all of plaintiff's claims are barred on the basis

that they necessarily imply the invalidity of his prior conviction.

**1.     Unlawful Search**

Plaintiff alleges that he was unlawfully strip-searched when police officers reached into

his underwear at the convenience store where he was arrested.  In order to recover damages for

an unlawful search arising from the same transaction underlying a criminal conviction, a plaintiff

must demonstrate (1) that the allegation of an unlawful search does not necessarily imply that the

criminal conviction was unlawful, and (2) that the search caused the plaintiff actual,

compensable injury beyond his conviction and imprisonment.  *Heck*, 512 U.S. at 487 n.7; *see*

*also Cabot v. Lewis*, 241 F. Supp. 3d 239, 256 (D. Mass. 2017) (finding that an allegation of

unlawful search may survive when it is "not a challenge to the fact or length of [plaintiff's]

confinement").

   The claim here does not satisfy either of those criteria.  First, his claim that the search of

his person was unlawful would necessarily imply that his conviction for drug possession was

invalid.  He pleaded guilty to possession of a controlled substance; that substance was discovered

during the officers' search of his person.  A finding that the search was unlawful would certainly

imply that the drugs recovered were not admissible in a criminal prosecution against him under

the exclusionary rule, which in turn would imply that his criminal conviction for possession of

the drugs recovered in this search was unlawful as well.  A variety of courts have held that a

claim for an unlawful search is barred under *Heck* when a plaintiff was convicted based on the

fruits of that search.  *See, e.g., Mangual v. City of Worcester*, 285 F. Supp. 3d 465, 472  (D.

Mass. 2018) (dismissing a claim under § 1983 for an unlawful search after heroin discovered

during the search led to a conviction for drug possession); *Fairbanks v. O'Hagan*, 255 F. Supp.

3d. 239, 245 (D. Mass. 2017) (dismissing claim for unlawful seizure of guns because the plaintiff

"[pleaded] to sufficient facts and accepted a [continuance without a finding] for improper storage

of the [guns]").

   Second, plaintiff has not shown that the search caused him any actual, compensable

injury beyond his conviction and imprisonment.  He alleges that he was "illegally held in custody

for over 10 months in total" as a result of the trial court's failure to exclude the evidence seized

during the search. (Am. Compl. 3).  But that is the only injury he claims.  Because that claim

plainly challenges "the fact or length of [plaintiff's] confinement," it cannot survive.  *Cabot*, 241

F. Supp. 3d at 256.

### 2.      **False Arrest**

Plaintiff further alleges that he was wrongfully detained and arrested by defendant police

officers.  In order to recover for a false arrest claim under § 1983, a plaintiff must prove that the

arrest lacked probable cause.  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Holder v. Town of*

*Sandown*, 585 F.3d 500, 504 (1st Cir. 2009).  To establish that an arrest lacked probable cause,

the plaintiff must show that the police officers acted unreasonably in arresting him. *Holder*, 585

F.3d at 504.  "Probable cause requires only a *probability* that the defendant committed the

crime." *Id.* (emphasis added).

The favorable-termination rule may also apply to a claim for false arrest, because any

claim that the arrest lacked probable cause necessarily implies that the conviction resulting from

the arrest was invalid.  *Cabot,* 241 F. Supp. 3d at 255 (holding that a claim for false arrest was

barred by the favorable-termination rule, because in order to succeed, the plaintiff would have to

negate an element of the offense for which he was arrested); *see also Sholley v. Town of*

*Holliston*, 49 F. Supp. 2d 14, 18 (D. Mass. 1999) ("[P]roof that there was no probable cause to

arrest for any reason necessarily implies the invalidity of the conviction for failure to submit.");

*Davis v. Schifone*, 185 F. Supp. 2d 95, 100 (D. Mass. 2002) ("Plaintiff's wrongful arrest claim, if

successful, would necessarily imply the invalidity of his conviction for operating under the

influence" and was therefore barred by *Heck*).

Here, in order for plaintiff to show that the police officers acted unreasonably in arresting him, he would have to prove that they had insufficient evidence to support a finding of probable cause. But plaintiff was lawfully convicted of possession with intent to distribute. To argue that his arrest for that offense lacked probable cause necessarily implies the invalidity of his conviction for the very same offense. Therefore, the claim for false arrest is barred under the rule of *Heck*.

### 3.      Civil Conspiracy

In order to recover damages for a civil conspiracy claim under § 1983, plaintiff must prove (1) an agreement between two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, and (2) an actual deprivation of a right secured by the Constitution and laws. *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988) (citing *Landrigan v. City of Warwick*, 628 F.3d 736, 742 (1st Cir. 1980)).

Plaintiff here cannot show that there has been an actual deprivation of his rights. It is unclear from the complaint what deprivation he alleges; assuming that the rights implicated are his Fourth Amendment rights to be free from unlawful search and arrest, the claim is barred by *Heck*. Again, if successful, the success of those claims would necessarily imply the invalidity of his criminal conviction. Therefore, the civil conspiracy claim must also fail.[2]

### 4.      Intentional or Negligent Infliction of Emotional Distress

The complaint alleges a claim under state law of "intentional or negligent infliction of

---

[2] In addition, the complaint does not allege facts sufficient to show that Officers O'Brien and Dugal arrived at any agreement. It alleges that "the officers lied . . . in the police report," but even if that were true, the filing of a false police report, in furtherance of an alleged conspiracy to cover up wrongdoing, is not an independent constitutional violation under § 1983. *See Jellyman v. City of Worcester*, 354 F. Supp. 3d 95, 100-01 (D. Mass. 2019) (collecting cases). Furthermore, the police report in question was written by Officer O'Brien alone, and there is no allegation that Officer Dugal colluded with him to fill the report with falsehoods. (Incident Report 1).

7

emotional distress."  It is unclear whether the *Heck* favorable-termination rule applies to state-

law claims.  *Compare Turkowitz v. Town of Provincetown,* 914 F. Supp. 2d 62, 74-75 (D. Mass.

2012) ("*Heck . . .* operates only to bar alleged civil rights violations under § 1983.  It does not

prevent tort claims based on state law.") (internal citation omitted) *with Aldrich v. City of*

*Cambridge*, 2012 WL 6622495, at *8 n.10 (D. Mass. 2012) (collecting cases for the proposition

that tort claims are barred unless the plaintiff obtains a "favorable termination" of the underlying

conviction).  Nonetheless, there is no obvious reason why the policy goal underlying the

favorable-termination rule of *Heck*—that is, preventing collateral attacks on criminal convictions

through civil suits—should not "apply with equal weight to state-law claims."  *Cabot*, 241 F.

Supp. 3d at 257.  State-law tort claims should therefore be "barred to the extent that success on

those claims would undermine the validity of the disposition of the criminal proceeding."  *Id.*

Here, both state-law claims must be dismissed because their success would necessarily

imply the invalidity of plaintiff's criminal conviction.  Furthermore, and in any event, both

claims must be dismissed because the complaint fails to state factual allegations supporting each

material element of the claims.

### a.      Intentional Infliction of Emotional Distress

In order to recover damages for intentional infliction of emotional distress ("IIED"), a

plaintiff must prove that "(1) the defendant intended to inflict emotional distress or knew or

reasonably should have known that emotional distress was likely to result from such conduct; (2)

the conduct was 'extreme and outrageous,' 'beyond all possible bounds of decency,' and 'utterly

intolerable in a civilized community'; (3) the defendant's conduct proximately caused plaintiff's

emotional distress; and (4) the distress was so 'severe that no reasonable man could be expected

to endure it.'"  *Davignon v. Clemmey*, 322 F.3d 1, 8 n.2 (1st Cir. 2003) (quoting *Agis v. Howard*

*Johnson Co.*, 371 Mass. 140, 145 (1976)).

"To the extent that plaintiff's IIED claim is premised on the fact that defendants arrested him, that claim is barred by *Heck*." *Cabot*, 241 F. Supp. 3d at 259.  However, to the extent such a claim is based on the conduct of the officers prior to arresting the plaintiff, the alleged use of excessive force, or egregious conduct following the arrest once plaintiff is in custody, the claim is not barred because success on those claims does not require plaintiff to show that he was arrested without probable cause. *Id*.

The factual allegations underpinning the claim for intentional infliction of emotional distress are not clear from the complaint.  However, there are as many as four different events set out in the complaint that arguably qualify:  (1) emotional distress arising from his arrest and incarceration, (2) injuries suffered in a car accident while incarcerated, (3) allegations that the police officers made false statements in their incident report, and (4) allegations of a pattern of harassment by defendant police officers.  (Am. Compl. 3).

The first and second theories are barred under *Heck*, because both alleged injuries are directly premised on the theory that defendants wrongfully arrested plaintiff, causing him to suffer while being wrongfully incarcerated.  In any event, the complaint does not allege that the defendants were responsible for the car accident, or that the accident was a reasonably foreseeable consequence of defendants' actions in arresting plaintiff.

The third theory is not necessarily barred under *Heck*, as plaintiff presumably could show that the police officers included lies in their incident report without invalidating his conviction.  However, the allegations in the complaint do not state a claim for intentional infliction of emotional distress.  Lying in a police report is not such "extreme or outrageous" conduct that it could produce distress "so severe that no reasonable man could be expected to endure it."

9

*Davignon*, 322 F.3d at 8 n.2.  And the complaint does not allege any facts to support his claim

that he actually experienced emotional distress, let alone severe emotional distress, as a result of

the alleged lies.

The fourth claim—that defendant police officers engaged in a pattern of behavior that

subjected plaintiff to repeated harassment—is not necessarily barred under *Heck*.  However, that

allegation is not pleaded with sufficient specificity to raise a right to relief above the speculative

level.  The complaint refers to "previous encounters" of police harassment, but does not describe

them or give any information about their time or location.  The only police encounter the

complaint describes specifically is a previous arrest by Officer O'Brien in a Dunkin' Donuts,

which resulted in plaintiff's criminal conviction under Docket No. 1701CR001418.  (Am.

Compl. 2).[3]  But plaintiff cannot successfully argue that the previous arrest was wrongful

without implying the invalidity of his conviction under Docket No. 1701CR001418, which is

barred by *Heck*.  Plaintiff cannot prove a claim for intentional infliction of emotional distress

based on the fact that he was arrested twice for incidents that yielded outstanding convictions.

### b.     <u>Negligent Infliction of Emotional Distress</u>

In order to recover damages for negligent infliction of emotional distress ("NIED"), a

plaintiff must prove "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm

manifested by objective symptomatology; and (5) that a reasonable person would have suffered

emotional distress under the circumstances of the case."  *Payton v. Abbott Labs*, 386 Mass. 540,

557 (1982).  As set forth above, based on the favorable-termination rule, plaintiff cannot recover

---

[3] The complaint actually refers to "Boston Municipal Court Docket 1801CR001418." (Am. Compl. 2). There is no such docket.  The Court assumes that plaintiff is referring to Docket No. 1701CR001418, which arose out of a March 2017 arrest at 80 Boylston Street, and in which plaintiff pleaded guilty to distribution of a Class B substance, Mass. Gen. Laws ch. 94C, § 32A(a), and possession with intent to distribute a Class B substance, Mass. Gen. Laws ch. 94C, § 32A(a).  (Def. Ex. 5).

damages for the emotional injury of being searched, arrested, and incarcerated.  As for the other

alleged emotional injuries, the complaint fails to state sufficient factual allegations.  It does not

allege that plaintiff's emotional distress caused him to suffer any "physical harm manifested by

objective symptomatology."  *Payton*, 386 Mass. at 557.  The only physical harm plaintiff

describes is injury from a car accident while he was incarcerated.  However, physical injuries

from a car accident are not a "physical manifestation of mental distress."  *See Sullivan v. Boston

Gas Co.*, 414 Mass. 129, 139 (1993).  Furthermore, the complaint does not sufficiently allege a

causal nexus:  the officers' actions could not be the proximate cause of plaintiff's injuries from a

car accident that occurred months after the arrest while he was in custody of a different agency.

### 4.      **Punitive Damages**

Punitive damages are available in a § 1983 case when the defendant's conduct involves

"reckless or callous indifference to the plaintiff's federally protected rights" or when it is

"motivated by evil motive or intent."  *Smith v. Wade*, 461 U.S. 30, 30 (1983).  Punitive damages

are a remedy, not a cause of action.  *Id.* at 35.  Plaintiff's claim for punitive damages is therefore

derivative of his other claims.  *See, e.g.*, *Souza v. Colgate-Palmolive Co.*, 302 F. Supp. 3d 478,

479 (D. Mass. 2018) (punitive damages cannot stand as a separate count).  Because the

complaint fails to allege a right to relief under any of the other claims, plaintiff cannot recover

punitive damages.

### B.      **The Claims Against Officers O'Brien and Dugal Are Barred by Qualified Immunity.**

Even if the claims against Officers O'Brien and Dugal were not barred by the favorable-

termination rule, they would be barred by qualified immunity.  The doctrine of qualified

immunity protects public employees "from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is determined according to a two-part test.  *See Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009); *Maldonado v. Fontanes*, 568 F.3d 263, 268-9 (1st Cir. 2009).  The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Maldonado*, 568 F.3d at 268-9.

The question is not whether some right has been clearly established at a highly abstract level—for example, the right to be free from unreasonable searches and seizures—but "whether, under the circumstances that confronted the official, 'a reasonable official would understand that what he is doing violated that right.'" *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In other words, the question is "whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005) (quoting *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004)).  The qualified-immunity doctrine "leaves ample room for mistaken judgments." *Berthiaume*, 142 F.3d at 15 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Here, there has been no showing of a violation of plaintiff's constitutional rights.  And even assuming such a violation could be proved, a reasonable official would not have understood that what he was doing violated plaintiff's constitutional rights.

A strip-search must be justified by at least a reasonable suspicion that the arrestee is concealing contraband or weapons. *Swain v. Spinney*, 117 F.3d 1, 7 (1st Cir. 1997).  When officers have probable cause to believe that a suspect is concealing evidence on his or her person, it is permissible to conduct a warrantless strip-search under exigent circumstances when "there

was such a compelling necessity for immediate action as would not brook the delay of obtaining

a warrant." *Burns v. Loranger*, 907 F.2d 233, 237 (1st Cir. 1990) (internal citation and quotation

omitted).  In *Burns*, the First Circuit affirmed the reasonableness of a strip-search during the

execution of a search warrant, as officers had probable cause to believe plaintiff had concealed

drugs on her person, and the "exigent circumstances" were based on her attempt to dispose of the

drugs in the bathroom.  *Id.*  Similarly, in *United States v. Cofield*, 391 F.3d 334, 336-37 (2004),

the First Circuit upheld the lawfulness of a visual search of the suspect's underwear at a police

precinct following his arrest for possession of heroin recovered from his pants pockets, based on

the officers' reasonable belief that he may have concealed more contraband in his underwear.

Here, the officers' search of plaintiff's underwear did not violate clearly established law.

The officers had probable cause to believe that plaintiff was concealing drugs on his person;

indeed, he had reached and grabbed an item from his sock; and he had bulges in his socks that

were revealed to be money and nine individually wrapped pieces of crack cocaine.  Under the

circumstances, the officers had reason to believe that plaintiff may have concealed more

contraband in his underwear.  The risk that he may have tried to dispose of the contraband (by

fleeing, throwing it away, leaving it in the squad car, or flushing it down the toilet) presented

exigent circumstances justifying an immediate search of his clothing.

Under the circumstances, a reasonable police officer would not have understood that

performing a search of plaintiff's underwear violated his constitutional rights.  Therefore, Officer

O'Brien and Officer Dugal are entitled to qualified immunity.

### C.        <u>The Complaint Fails to State a Claim Against the City of Boston.</u>

Again, even assuming that the claims are not barred by the favorable-termination rule, the claims against the City of Boston fail for other reasons.

### 1.        <u>*Monell* Claim Under 42 U.S.C. § 1983</u>

A municipality may not be held vicariously liable under 42 U.S.C. § 1983 for the acts of its employees or agents. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, under *Monell* and its progeny, a municipality may be held liable for alleged constitutional deprivations that arise from a governmental policy or practice. In addition to establishing a constitutional deprivation, a plaintiff must show (1) that the municipality had a custom, policy, or practice of failing to investigate, discipline, supervise, or train its officers; (2) that the custom, policy, or practice was such that it demonstrated a "deliberate indifference" to the rights of those citizens with whom its officers came into contact; and (3) that the custom, policy, or practice was the direct cause of the alleged constitutional violation. *DiRico v. City of Quincy*, 404 F.3d 464, 468-69 (1st Cir. 2005) (internal quotations omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Monell*, 436 U.S. at 690-92.

Here, the complaint fails to make sufficient allegations of a policy or custom of the City of Boston that directly caused the alleged constitutional violation. The complaint only refers to one prior incident where Officer O'Brien conducted what plaintiff claims was an illegal search, which resulted in plaintiff's arrest and criminal conviction under Docket No. 1701CR001418. A single such incident, without more, is not sufficient proof of a policy or custom. Furthermore, and in any event, any argument that Officer O'Brien acted unconstitutionally in the previous case would imply the invalidity of his previous conviction, which is barred by *Heck*.

The complaint also fails to make sufficient allegations that the City of Boston exhibited

"deliberate indifference" to the rights of the citizens interacting with the police.  To demonstrate

deliberate indifference, the plaintiff must show "(1) a grave risk of harm, (2) the defendant's

actual or constructive knowledge of that risk, and (3) [defendant's] failure to take easily

available measures to address the risk."  *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998).

In other words, plaintiff must allege facts showing that the City of Boston knew or should have

known that there was a grave risk that its police officers were depriving people of their

constitutional rights, "but nonetheless exhibited deliberate indifference to the unconstitutional

effects of those inadequacies."  *Gray v. Cummings*, 917 F.3d 1, 14 (1st Cir. 2019) (quoting *Haley

v. City of Boston*, 657 F.3d 39, 52 (1st Cir. 2011)).  To demonstrate deliberate indifference, a

plaintiff typically must show a pattern of similar constitutional violations that would have placed

the City on notice of the risk that its officers were behaving unconstitutionally.  *Gray*, 917 F.3d

at 14.  Here, plaintiff has not demonstrated that the City of Boston had actual or constructive

knowledge of any similar constitutional violations.  Even if this Court were to credit plaintiff's

assertion that his previous arrest by Officer O'Brien was unlawful, the complaint does not allege

that he put the City on notice of that fact—for example, by filing a police department complaint

or a civil lawsuit.

Accordingly, the complaint fails to state a claim against the City of Boston under 42

U.S.C. § 1983.

### 2.        State Law Tort Claims under the Massachusetts Tort Claims Act

The Massachusetts Tort Claims Act ("MTCA") waives sovereign immunity for certain

state-law claims against "public employers" such as the City of Boston.  Mass. Gen. Laws ch.

258, § 2.  The MTCA permits municipal liability for "the negligent or wrongful act or omission

of any public employee while acting within the scope of his office or employment," subject to

discrete limitations on the types of claims set forth in § 10 of the Act.  *Id.* at § 2, § 10.

Here, there is no dispute that Officers O'Brien and Dugal were acting within the scope of their employment at the relevant time.  The MTCA is therefore the exclusive remedy for state-law tort claims against the City of Boston and Officers O'Brien and Dugal in their official capacities.[4]  However, any such claim is barred by the MTCA for multiple reasons.

First, plaintiff has failed to abide by the procedural requirements of the MTCA. According to the statute, a plaintiff may not institute a civil action against a public employer until (1) he has "presented his claim in writing to the executive officer of such public employer within two years" of the offending incident, and (2) the executive officer has denied the claim in writing or failed to issue a denial within six months.  Mass. Gen. Laws ch. 258, § 4. "Presentment is a statutory condition precedent to recovery under [the MTCA]."  *Vasys v. Metropolitan Dist. Com'n*, 387 Mass. 51, 55 (1982).  Because defendants have raised this issue of defective presentment in their answer, and two years have not yet elapsed from the incident in question, in theory plaintiff still has an opportunity to cure the defect.  *Id.* at 55-56 (holding that a complaint brought under the MTCA cannot be dismissed for lack of subject-matter jurisdiction solely for failure to comply with presentment requirement, but may be dismissed for failure to state a claim if the two-year time period has elapsed).  However, at present, plaintiff has not alleged presentment and therefore may not recover under the MTCA.

Second, the MTCA does not permit recovery for intentional torts, including intentional infliction of emotional distress.  Section 10(c) of the MTCA states that the Act shall not apply to

---

[4] "The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or, the public employee or his estate whose negligent or wrongful act or omission gave rise to such claim, and no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment."  Mass. Gen. Laws ch. 258, § 2.

"any claim arising out of an intentional tort," including "intentional mental distress."  Mass. Gen. Laws ch. 258, § 10(c).

Third, the MTCA would not permit recovery for negligent infliction of emotional distress in this case, because the alleged negligence arose from discretionary functions.  Section 10(b) of the statute states that the Act shall not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused."  Mass. Gen. Laws ch. 258, § 10(b).  It is well-settled that the "decisions of law enforcement officers regarding whether, when, how, and whom to investigate . . . are discretionary functions and therefore fall within the exception of § 10(b)." *Sena v. Commonwealth*, 417 Mass. 250, 256-57 (1994).  The actions of Officers O'Brien and Dugal in searching, detaining, and arresting plaintiff are clearly "decisions of law enforcement officers regarding whether, when, how, and whom to investigate," and therefore fall within the "discretionary function" exception to the MTCA.

In short, the MTCA is the exclusive remedy for state-law tort claims against the City of Boston (including any liability for Officers O'Brien and Dugal in their official capacities).  Because plaintiff failed to present his claims, and because both of his claims fall within statutory exceptions, he cannot recover under the MTCA.

IV.     Conclusion

For the foregoing reasons, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.

**So Ordered.**

                                      /s/ F. Dennis Saylor IV

                                      F. Dennis Saylor IV

Dated:  March 23, 2020                  Chief Judge, United States District Court